UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY HARGROW,  Plaintiff,  v.  WISCONSIN CENTRAL LTD., a corporation, d/b/a "CN," REZENBERGER, INC., d/b/a HALLCON CREW TRANSPORTATION INC., and CRYSTAL M. DUERSON,  Defendants. | No. 25 CV 7430  Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Tony Hargrow was a Wisconsin Central railway employee who was a passenger in a van driven by a Hallcon Crew Transportation employee when it collided with a car driven by Crystal Duerson. He suffered severe and permanent injuries from the crash. He sues Wisconsin Central for negligence under the Federal Employers' Liability Act and Hallcon for negligence and breach of contract. Hallcon moves to dismiss the breach of contract claim for failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion is denied.

I.  Legal Standards

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Id.*

## II.  Facts

Plaintiff Tony Hargrow was a locomotive engineer employed by defendant Canadian National Railway, d/b/a Wisconsin Central. [29] ¶ 13.[1] Defendant Rezenberger, d/b/a Hallcon Crew Transportation, transported railroad workers for Wisconsin Central pursuant to a contract between Hallcon and Canadian National, Wisconsin Central's parent company.[2] [29] ¶¶ 14–15. The contract required Hallcon to abide by federal, state, and local laws and rules in its performance of the contract. [29] ¶ 19; [21-1] at 10. It also required Hallcon to comply with Canadian National's policies, which were "designed to protect the company, its employees and assets, and third parties." [21-1] at 13.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. After Hallcon and Wisconsin Central filed motions to dismiss, Hargrow filed an amended complaint in response to Wisconsin Central's motion. [29]. The new complaint deletes a separate agency count directed at Wisconsin Central and therefore cures the problem identified by Wisconsin Central's motion. That motion, [18], is denied as moot. Hallcon filed an answer to the amended complaint, incorporating its motion to dismiss in response to Count III of the amended complaint. [40] at 10. The facts are taken from Hargrow's amended complaint, [29], and the contract at issue, attached as Exhibit A to Hallcon's motion to dismiss. [21-1]. *See Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025) ("The face of the complaint refers not just to its four corners but includes … documents incorporated into the complaint by reference.").

[2] Wisconsin Central is a subsidiary of Canadian National. [23]. Both parties agree that the contract governs the relationship between Wisconsin Central and Hallcon.

On August 31, 2023, a Hallcon passenger van driver picked Hargrow up from a hotel in Joliet, Illinois, to bring him to his assigned train. [29] ¶¶ 20–21. As the van was driving east toward Cicero Avenue in Matteson, Illinois, defendant Crystal Duerson was driving north on Cicero. [29] ¶¶ 22–23. The two cars collided. [29] ¶ 24. Duerson's blood alcohol content was .17 directly after the incident. [29] ¶ 25. She was charged with driving under the influence. [29] ¶ 25.

Hargrow alleges that the Hallcon driver "failed to take timely and appropriate action as required by a prudent and safe driver and by his training and instruction." [29] ¶ 27. He alleges that the collision occurred because the Hallcon driver failed "to be alert, attentive, and follow reasonable defensive driver training and follow the laws and rules of the road." [29] ¶ 28. Hargrow suffered "severe and permanent injuries" and was "otherwise damaged." [29] ¶ 29.

### III. Analysis

Hallcon moves to dismiss Hargrow's breach of contract claim because Hargrow was not a party to the contract, nor was he an intended third-party beneficiary entitled to enforce the contract. Hargrow responds that he was a third-party beneficiary under Quebec law, which governs the contract. Alternatively, he also contends he was a third-party beneficiary under Illinois law.

#### A. Choice of Law

Hargrow seeks to enforce the choice-of-law provision in the contract between Wisconsin Central and Hallcon. The contract stated that the "agreement and all matters regarding its interpretation and enforcement shall be governed by the laws

3

of the Province of Quebec and the federal laws of Canada where applicable." [21-1] at 13. Hallcon argues that the choice-of-law provision does not apply, and that Illinois law governs.

A nonparty's right to enforce a contract is governed by state law. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). A federal court hearing state-law claims under supplemental or diversity jurisdiction looks to the forum state's choice-of-law rules to determine which jurisdiction's law applies. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *RS Invs. Ltd. v. RSM US, LLP*, 2019 IL App (1st) 172410, ¶ 16 (applying choice-of-law analysis to determine whether Illinois or foreign jurisdiction's law applied).[3] Generally, Illinois courts respect a contract's choice-of-law provision if the contract is valid and the chosen law is not contrary to Illinois's fundamental public policy. *Sosa*, 8 F.4th at 638. But nonparties to a contract are not entitled to enforce a contractual choice-of-law provision. *Id.*; *Washington v. Persona Identities, Inc.*, 2024 IL App (3d) 240210, ¶ 20 ("[O]nly parties to a contract may invoke its choice-of-law provision."). So, I apply Illinois's traditional choice-of-law analysis to determine whether Quebec or Illinois law governs.

---

[3] I have supplemental jurisdiction over the state-law claims via 28 U.S.C. § 1367(a), because they form part of the same case or controversy as Hargrow's Federal Employers' Liability Act Claim. I also have jurisdiction under 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy is greater than $75,000. [29] ¶ 7. Plaintiff Hargrow is a citizen of Wisconsin. [29] ¶ 23. Defendant Wisconsin Central is a citizen of Delaware and Illinois. [29] ¶ 3. Defendant Rezenberger is a citizen of Kansas, and its parent company, Hallcon Corporation, is a citizen of Canada. [29] ¶ 4. Defendant Duerson is a citizen of Illinois. [29] ¶ 5. The amount in controversy is more than $75,000. [29] ¶ 7; [40] ¶ 7; *Sykes v. Cook Inc.*, 72 F.4th 195, 206 (7th Cir. 2023) ("If on the date of filing, the plaintiff could allege in good faith that over $75,000 was at stake, then the amount-in-controversy requirement is satisfied.").

In Illinois, the forum law is applied "unless an actual conflict with another [jurisdiction's] law is shown." *Sosa*, 8 F.4th at 637 (quoting *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020)). An actual conflict is one where the application of the other jurisdiction's laws over Illinois's will affect the outcome of the dispute. *Id.* Here, the question is whether there is an outcome-dispositive difference in Quebec or Illinois law for recognizing a third-party beneficiary to a contract.

Under Illinois law, only a party to a contract, someone in privity with such a party, or an intended third-party beneficiary of the contract can bring a breach of contract claim. *Protect Our Parks, Inc. v. Buttigieg*, 97 F.4th 1077, 1089 (7th Cir. 2024). Illinois has a "strong presumption against creating contractual rights in third parties, and this presumption can only be overcome by a showing that the language and circumstances of the contract manifest an affirmative intent by the parties to benefit the third party." *Id.* (quoting *Estate of Willis v. Kiferbaum Constr. Corp.*, 357 Ill.App.3d 1002, 1007 (1st Dist. 2005)). In essence, "the contracting parties must have intended for the performance of the contract to directly benefit the third party." *Harleysville Ins. Co. v. Mohr Architecture, Inc.*, 2021 IL App (1st) 192427, ¶ 30. "[I]f the promisee bargains with the promisor to render a performance directly to a third party, in nearly every case the promise will have intended to benefit that third party." *Id.* (alteration in original).

Under Quebec law, "[a] person may, in a contract, stipulate for the benefit of a third person. The stipulation gives the third person beneficiary the right to exact performance of the promised obligation directly from the promisor." Civil Code of

5

Quebec, S.Q. 1991, c. 64 art. 1444 (Can.). To show a valid stipulation, the third party must show that (1) the contract between the stipulator and the promisor is valid; (2) the stipulator has an interest in stipulating which is not necessarily pecuniary, because moral interest is sufficient; (3) the beneficiary can be determined and he exists when the promisor is required to perform; and (4) the stipulation is accepted and this acceptance is brought to the attention of the promisor. *County Line Trucking Ltd. c. La Souvraine, Compagnie d'assurances générales*, 2015 QCCA 1370, ¶ 37 (Can. Que.) (CanLII).[4] The contract must contain a clear intention to create a "real right" for the third party, not just a "simple benefit." *Maher c. Ville de Hudson*, 2021 QCCA 1063, ¶ 15 (Can. Que.) (CanLII). "The existence of a stipulation for the benefit of a third party thus depends essentially on the intent of the parties." *Dufresne Eng'g Co. v. Demers*, [1979] 1 S.C.R. 146, ¶ 4 (Can.). If the stipulation is not expressly stated, the "existence of the stipulation for the benefit of a third party is properly a matter of contract interpretation." *Dufresne Eng'g*, [1979] 1 S.C.R. 146, at ¶ 4.

Both Illinois and Quebec law require a clear intention to benefit a third party. The contract here is between Canadian National Railway Company ("CN" in the contract) and Hallcon ("Supplier") for the transportation of Canadian National employees (and the employees of their affiliates).[5] *See, e.g.*, [21-1] at 1–2 ("'Affiliate' means any natural or legal person directly or indirectly … controlled by or under

---

[4] Hargrow cites the translation of this case, and another, *Maher c. Ville de Hudson*, 2021 QCCA 1063 (Can. Que.) (CanLII), in his brief. The original opinions are written in French. Hallcon does not dispute the accuracy of Hargrow's translations, so I accept the parties' representation of the English version of Quebec law.

[5] This includes Wisconsin Central employees. *See* note 2.

common control" of CN); *id.* at 4 ("Supplier shall provide the Services to CN and its Affiliates"); *id.* at 18 ("Supplier shall provide, Local Services, Deadhead Services, Backhaul Services and Rescue Services"); *id.* at 2 ("Backhaul services" means the return trip whereby Supplier transports a CN Crew from the Destination Location to the Origin Location after an original trip."); *id.* ("'CN Crew' means CN Employees, sub-contractors, individuals assigned by CN to visit work locations, as well as any other CN authorized guests."); *id.* ("'Deadhead Services' means the outbound trip whereby Supplier transports a CN Crew from the Origin Location to a Destination Location."); *id.* ("'Destination Location' means the predefined location where Supplier Personnel drop off CN crew members as part of the Services performed under this agreement."); *id.* at 3 ("'Origin Location' means the predefined location where Supplier Personnel pick up CN crew members as part of the Services performed under this agreement."); *id.* ("'Services' means the transportation services as further described in this Agreement and at Schedule I, Services."). Canadian National bargained with Hallcon to render a service—providing transportation to and from certain locations—directly to employees of Canadian National and its affiliates, including Wisconsin Central. *Harleysville*, 2021 IL App (1st) 192427, at ¶ 30.

Other provisions of the contract also show how CN employees were entitled to benefits under the contract—CN employees could request transportation, report unsafe conditions and "secure alternate transportation" paid for by Hallcon, and request rest stops during trips. [21-1] at 5–6. If one of Hallcon's employees were deemed to have worked in an unsafe manner or in a condition contrary to safety and

7

fitness to work rules and policies, that employee would be required "to cease *providing any Services for CN Employees.*" [21-1] at 18 (emphasis added). Vehicles were required to be available "to the local CN personnel" and services "shall be acceptable to CN crews," measured by refusals of crew members to accept non-safe services. [21-1] at 25. The contract language shows that the parties intended that Hallcon provide services directly to CN employees, who themselves could request services or refuse them if they determined Hallcon was not providing acceptable services. Because the "language and circumstances of the contract manifest an affirmative intent by the parties" to benefit employees like Hargrow, Hargrow has adequately alleged that he is a third-party beneficiary of the contract under Illinois law. *Protect Our Parks*, 97 F.4th at 1089.

There is no dispute that the contract was valid, that Canadian National had an interest in providing transportation for its employees to work sites (where they would perform work for the company), that its employees could be determined and existed at the time Hallcon performed on the contract, or that Hargrow accepted the alleged stipulation and brought the acceptance to Hallcon's attention by taking a ride with a Hallcon driver. *See County Line Trucking*, 2015 QCCA 1370, at ¶ 37. At issue under Quebec law is whether the parties clearly intended to create a right for the benefit of CN employees. *Maher*, 2021 QCCA 1063, at ¶ 15. Hallcon committed itself to provide transportation services for CN employees. The services were not "just" a "simple benefit": the contract created a right to safe services for employees—one that employees could enforce by rejecting services and finding alternate transportation

8

that would be reimbursed by Hallcon. *See id.* Under Quebec law, too, Hargrow has alleged facts that, as an employee covered by the contract, he was an intended third-party beneficiary.

Because there is no difference in the outcome, I will apply Illinois law.

**B. Merits**

Hargrow alleges he is a third-party beneficiary of the contract between Hallcon and Canadian National/Wisconsin Central, that Hallcon breached the contract when its driver "drove and operated its vehicle unreasonably, negligently, and not in conformity with the laws, standards, and rules required of professional drivers," and that he was damaged as a result of the breach. [29] ¶¶ 48–51. Hallcon argues that Hargrow was not a third-party beneficiary to the contract and so cannot enforce the contract and has no claim for any alleged breach. As explained above, Hargrow has adequately alleged that he was a third-party beneficiary to the contract. Hallcon's motion to dismiss is denied.

Hallcon also contends that if Hargrow is a third-party beneficiary of the contract, he should be subject to the arbitration provision of the agreement. [36] at 7–9. It says the claim should be dismissed so that his grievances can be resolved according to that provision. Because Hallcon first flagged this issue in reply, the argument is waived for purposes of its motion to dismiss. *Swiecichowski v. Dudek*, 133 F.4th 751, 756 n.4 (7th Cir. 2025). Besides, because the issue also requires the development of facts about whether Hargrow fulfilled a predicate for the breach of contract claim, it is best handled in future proceedings.

## IV. Conclusion

Hallcon's motion to dismiss, [20], is denied. Wisconsin Central's motion to dismiss, [18], is denied as moot. Hallcon shall answer Count III by January 7, 2026, and by the same deadline, the parties shall file a joint report on the status of the criminal case against Duerson and written discovery between the parties. The parties shall also state their positions on resuming discovery and propose the remainder of the case schedule.

ENTER:

                                                               Manish S. Shah
                                                               United States District Judge

Date: December 3, 2025